

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

EAG
F.#2011R00006

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 3, 2012

<u>By ECF</u>

The Honorable Ramon E. Reyes, Jr.
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Benito Valenti
           <u>Criminal Docket No. 11-32 (KAM)</u>

Dear Judge Reyes:

      The government respectfully submits this letter in opposition to the defendant's motion to modify the conditions of release by traveling to North Carolina for one week. (Letter of Steve Zissou, Esq., dated June 29, 2012 (ECF Docket Entry No. 173) ("Def.'s Ltr.")). As set forth below, as well as in the government's detention memorandum dated January 20, 2011, a copy of which is attached as Exhibit A and incorporated by reference, the motion should be denied because the defendant poses a danger to the community and requires close supervision.

BACKGROUND

      The defendant is an associate in the Bonanno organized crime family of La Cosa Nostra (the "Bonanno crime family"), a violent criminal enterprise that engages in crimes including murder, robbery, extortion and obstruction of justice. On January 11, 2011, a grand jury returned an indictment charging the defendant with participating in a conspiracy to use extortionate means to collect a debt, in violation of 18 U.S.C. § 894(a). On January 20, 2011, the defendant was arrested. He was subsequently released on January 26, 2011, on a $400,000 bond, signed by four suretors and secured by one property, providing that the defendant would be subject to home detention with electronic monitoring and his travel would be limited to New York City and Long Island, New York. (ECF Docket Entry Nos. 18, 19). On August 1, 2011, the defendant pled guilty to conspiring to use extortionate means to collect a debt, in violation of 18

U.S.C. § 894(a)(1). (ECF Docket Entry No. 93). On the same date, the Honorable Kiyo A. Matsumoto eliminated the condition that the defendant be subject to home detention and electronic monitoring.

## DISCUSSION

I. <u>Legal Standard</u>

Where, as here, a defendant has been convicted, release is governed by 18 U.S.C. § 3143(a). That statute provides that a convicted defendant "shall" be detained unless "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released[.]" 18 U.S.C. § 3143(a)(1).

II. <u>The Defendant's Motion Should Be Denied</u>

Although the government is not seeking detention at this time (and has previously agreed to bond modifications (<u>see</u>, <u>e.g.</u>, ECF Docket Entry No. 102)), the danger posed by the defendant warrants strict conditions of release, including travel restrictions. Indeed, upon his arrest, even more stringent conditions of release, including home detention and electronic monitoring, were imposed in order to minimize the defendant's ability to commit crimes while on pre-trial (and now pre-sentence) release.

As noted above, the defendant is an associate in the Bonanno crime family and orchestrated a plan to use violent means to collect a debt owed to him. As alleged in Count Two of the Indictment -- and as the defendant admitted at his guilty plea -- the defendant conspired with others to use extortionate means to collect from John Doe #1 a loansharking debt owed to the defendant in the amount of approximately $33,000. To collect the debt, the defendant recruited his nephew and co-defendant, Nicolo Valenti, and a cooperating witness to assist in collecting the debt. Nicolo Valenti then provided the cooperating witness with John Doe #1's name and address, a description of John Doe #1's car and the name of a restaurant where John Doe #1 could be found. Nicolo Valenti also researched how to get to the area where John Doe #1 lives. The plan to collect the debt ceased only after John Doe #1 told Benito Valenti that agents of the Federal Bureau of Investigation ("FBI") had warned John Doe #1 that individuals in New York were looking for him.

Although the plan to use extortionate means never came to fruition due to the actions of the FBI, the defendant and his

2

coconspirators planned to use threats of violence – and may have engaged in violence – to accomplish their goal, namely, repayment of the money owed to the defendant.

Notably, one of the defendant's coconspirators – codefendant Neil Messina – put the cooperating witness in touch with the defendant and the defendant's nephew only after confirming he was willing to do "dirty work." The defendant – along with Messina and Nicolo Valenti – also have access to firearms, including one with a silencer. In March 2010, in a consensually-recorded conversation, Nicolo Valenti offered to sell a cooperating witness a .22 caliber handgun equipped with a silencer. In April 2010, again in a recording, Messina told the cooperating witness that he was "going to find out if it's [the firearm Nicolo Valenti offered to sell] the one in Long Island," which Messina described as a "22 with a silencer." Messina then explained that the firearms were "coming from [Nicolo Valenti's] uncle," a reference the cooperating witness understood to be to Benito Valenti. Messina also stated that Nicolo Valenti had a .32 caliber revolver that belonged to Messina. In a subsequent consensually-recorded conversation, Messina advised the cooperating witness that Benito Valenti had the .22 caliber handgun, but was not sure that Benito Valenti wanted to sell it.

In light of the defendant's conduct described above, which notably included out-of-state travel to collect a debt through extortionate means, the defendant's request to travel to North Carolina should be denied. The request is similarly suspect due to the sparsity of the defendant's letter, which fails to name the "friends" with whom he plans to visit; the individuals, if any, with whom he plans to make the ten hour drive to North Carolina; the reasons for staying in a hotel 20 minutes away from the city where these friends allegedly reside; and the necessity for the travel. (Def.'s Ltr.).

\* \* \*

In light of the applicable legal standard -- which presumes not just restricted travel but also that detention is necessary -- as well as the defendant's association with an organized crime family, the crime he committed in this case, and the fact that the defendant has pleaded guilty and faces an advisory Guidelines sentence of 21 to 27 months,[1] the government

---

[1] The advisory Guidelines range of 21 to 27 months includes a two-point reduction based on a global resolution.

respectfully submits that the defendant's request for a bail modification should be denied.

## CONCLUSION

For the reasons set forth above, the government respectfully asks that the request be denied. Should the Court be inclined to grant the defendant's request, the government respectfully submits that prior to granting such request, the defendant should be required to submit an affidavit from the suretors of the defendant's bond indicating their consent to the proposed modifications.

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        UNITED STATES ATTORNEY

By:       /s/
                                        Elizabeth A. Geddes
                                        Allon Lifshitz
                                        Assistant U.S. Attorneys
                                        (718)254-6430/6164

cc:   Steve Zissou, Esq. (by ECF)
      Clerk of the Court (KAM) (by ECF)